IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GLORIA TOLBERT, | } |
| Plaintiff, | } |
| v. | } Case. No.: 2:07-CV-0795-RDP |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | } |
| Defendant. | } |

**MEMORANDUM OF DECISION**

Plaintiff Gloria Tolbert brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed her application for SSI benefits on February 2, 2004. (Tr. 33-35). Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 8, 2004. (Tr. 27-28). Plaintiff's case was heard by ALJ Sally C. Reason on January 10, 2006. (Tr. 198-232). In her February 13, 2005 decision, the ALJ determined that Plaintiff was not eligible for SSI benefits because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform a limited range of light work. (Tr. 15-17).

Plaintiff requested review of the ALJ decision by the Appeals Council, and after the Appeals Council denied Plaintiff's request for review on March 2, 2007 (Tr. 3-6), that decision became the final decision of the Commissioner, and therefore, a proper subject of this court's review.

Plaintiff was 50 years of age at the time of her hearing (Tr. 33) and has an eleventh grade education. (Tr. 199). She has past relevant work experience as a cook, cleaner, and food preparation worker. (Tr. 13). Plaintiff alleges that she has been unable to engage in substantial gainful activity since October 12, 2000, when she became unable to work due to arthritis and lupus. (Tr. 16, 38, 198).

Treatment notes from Cooper Green Hospital dated July 1999 and December 1999 explain that Plaintiff complained of numbness, tingling, and a burning sensation in her hands and feet. (Tr. 14). The medical records show that Plaintiff had undergone cervical discectomy with fusion and plating in 1998. (*Id.*) Plaintiff also complained of swelling in her knees and feet. (*Id.*) An examination revealed edema in her extremities. (*Id.*) Plaintiff was diagnosed with arthritis and prescribed Naprosyn for pain relief. (*Id.*) In June 2003, electrodiagnostic studies revealed normal results with no definite electrophysiologic evidence of neuropathy. (Tr. 128). In October 2003, Plaintiff again complained of musculoskeletal pain and muscle spasms, in addition to occasional nausea and constipation. (Tr. 89). She was prescribed Flexeril, Phnergan, and Colace. (*Id.*) She was also advised of the benefits of a high fiber diet. (Tr. 89).

Plaintiff has a history of discoid lupus. (Tr. 81). She was admitted to the University of Alabama Birmingham hospital on September 15, 2003, with complaints of progressive malaise, dizziness, muscle and joint aches, nausea, and vomiting. (*Id.*) Plaintiff denied taking any medicine for lupus, stating that she was unable to work while on her medication. (Tr. 82). Plaintiff was found

to be orthostatic, which was resolved with the administration of saline. (Tr. 83). Plaintiff's musculoskeletal pain was treated with nonsteroidal anti-inflammatory drugs and Tylenol, and she responded well to both. (*Id.*) Dulcolax and Colace were administered to Plaintiff for her constipation-related abdominal pain which was resolved after a bowel movement. (*Id.*) Phenergan remedied her nausea. (*Id.*) On September 18, 2003, the morning of her discharge, Plaintiff reported that she was feeling better and wanted to go home. (*Id.*)

No treatment records exist from 2004 or 2005. (Tr. 14). The only available medical evidence after 2003 is a consultative examination dated April 22, 2004, and a one-time independent examination dated January 9, 2006, for which Plaintiff had been referred by her attorney. (Tr. 169-191).

During her April 2004 consultative examination with Dr. John Lisiak, Plaintiff listed lupus as her chief complaint. (Tr. 170). She denied any skin lesions, problems with her kidneys, and any history of renal dialysis in connection with her lupus. (Tr. 171). She did report having difficulty holding her arms up for long periods of time and having arthritis pain in her knees and hands. (Tr. 170). Dr. Lisiak noted that Plaintiff was not taking medications such as Prednisone or Plaquenil. (Tr. 171). Plaintiff had a somewhat antalgic gait that appeared painful. (Tr. 174). Dr. Lisiak noted that she did not ambulate with an assistive device such as a cane. (*Id.*) Examination of Plaintiff's hands was unremarkable. (Tr. 173) Her right knee, which was slightly tender and swollen, exhibited mild arthritic changes. (*Id.*) Dr. Lisiak opined that Plaintiff would be able to sit, stand, or ambulate for 2-4 hours in an 8-hour day. (Tr. 175). She would also be able to lift or carry 10 to 25 pounds and bend, crouch, and stoop on an occasional basis. (*Id.*)

Plaintiff underwent a consultative examination performed by Dr. Jack L. Zaremba on January 9, 2006. (Tr. 184-191). Dr. Zaremba noted a limping gait favoring the right leg. (Tr. 185). He also noted that Plaintiff complained of leg and knee pain at a 30 degree leg raise. (*Id.*)  Dr. Zaremba diagnosed Plaintiff with systemic lupus with diffuse arthralgias, fatigability, and myalgias, and he also diagnosed her with hypertension. (Tr. 186). He indicated that Plaintiff would be able to lift five pounds occasionally or less. (Tr. 187). He also opined that Plaintiff could sit three hours and stand one hour in an 8-hour day, and Plaintiff would have restrictions as to various activities she might encounter at the workplace. (*Id.*)  Moreover, Dr. Zaremba surmised that: (1) Plaintiff had pain present and to such an extent as to distract her from adequate performance of daily activities or work; (2) physical activity would greatly increase Plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of tasks; and (3) Plaintiff has an underlying medical condition consistent with the pain experienced. (Tr. 188-89).

**II.    ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity consists of what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In

making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the day she applied for benefits. (Tr. 16). The ALJ determined that Plaintiff has arthritis and lupus, impairments that are considered "severe" based on the requirements in 20 C.F.R. 416.920(c). (*Id.*). Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements in the Listing of Impairments, Appendix 1, Subpart P, Regulation No. 4. According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible in light of the degree of medical treatment required, discrepancies between Plaintiff's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, and the medical history. (Tr. 16). The ALJ determined that Plaintiff retains the RFC to perform a limited range of light work. (Tr. 17).

5

The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 16, 224-31). The VE testified that Plaintiff has no transferable skills and her residual functional capacity precludes her from returning to her past work. (Tr. 225). However, the VE, taking into account the claimant's age, educational background, employment history, and impairments, testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 225-26). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 16).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision (which became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review) reversed, or in the alternative, remanded for further consideration. (Doc. # 10, at 9). Plaintiff asserts two reasons why this court should grant the relief sought: (1) the ALJ failed to pose a hypothetical question to the VE which included all of Plaintiff's impairments, and (2) the ALJ failed to properly apply the Eleventh Circuit's three-part pain standard. (Doc. #10, at 5, 7)

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that proper legal standards were applied.

### A. The ALJ Posed a Hypothetical Question to the VE Which Sufficiently Included All of Plaintiff's Impairments.

Plaintiff first argues that the ALJ failed to pose a hypothetical question to the VE which included all of Plaintiff's limitations and impairments. Specifically, Plaintiff notes that the ALJ, in her hypothetical to the VE, stated that Plaintiff could "lift frequently 10 pounds and only

occasionally up to 25 pounds." (Tr. 225). Plaintiff contends that the ALJ's hypothetical was in error because, rather than stating that Plaintiff could "frequently" lift 10 pounds, she should have stated that Plaintiff could only "occasionally" lift 10 pounds. Plaintiff also argues the ALJ's hypothetical was insufficient because it failed to include Plaintiff's limitation of "only occasional manual dexterity (manipulation)." Plaintiff claims that both Dr. Lisiak and Dr. Zaremba agreed Plaintiff was both limited in her dexterity and restricted to the occasional lifting of 10 pounds. Therefore, Plaintiff argues a properly phrased hypothetical would have included these limitations and would likely have resulted in a conclusion by the VE that Plaintiff is not eligible for light work. Plaintiff urges the court to find that the ALJ's decision, as a result of her under-inclusive hypothetical, is not supported by substantial evidence.

Defendant counters by pointing out Dr. Lisiak's assessment that Plaintiff would have "no expected limitations in [her] ability to perform tasks of manual dexterity utilizing both hands on <u>at least</u> an occasional basis" (Tr. 175) (emphasis supplied). The words "at least," Defendant argues, do not limit Plaintiff to the extent Plaintiff alleges. Defendant also notes other findings by Dr. Lisiak which suggest Plaintiff's manual dexterity is not limited to an extent that would have merited inclusion in the ALJ's hypothetical. As to Dr. Zaremba's findings, Defendant explains that, while Dr. Zaremba did note limitations on Plaintiff's manipulation, his findings concerning Plaintiff's grip suggest she would still be qualified for light work. (Tr. 185).

Regarding the ability to lift 10 pounds "frequently" or "occasionally," Defendant argues that Dr. Lisiak's language is properly interpreted as to not limit Plaintiff to occasional lifting of 10 pounds. Defendant admits that Dr. Zaremba indicated Plaintiff could only lift 10 pounds

occasionally, but Defendant contends the ALJ, as the fact-finder, was justified in giving Dr. Zaremba's report little weight.

The ALJ is required to question the vocational expert as to the availability of jobs for a person of Plaintiff's age, educational level, work experience, and with the limitations that the ALJ has found Plaintiff to have. *See Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985); *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980). A hypothetical question presented to a vocational expert must comprehensively describe the claimant's impairments; otherwise, a decision based upon that expert's testimony is not supported by substantial evidence. *See, e.g., Pendley*, 767 F.2d at 1562-63. However, where there is a "failure of proof by claimant as to [a particular] element of the hypothetical question," testimony of the expert as to such element becomes irrelevant. *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).

The court finds that the ALJ's hypothetical was sufficient here. Regarding the "frequent" versus "occasional" lifting of 10 pounds, the ALJ's decision to use "frequently" in her hypothetical is supported by substantial evidence. First, in his Residual Physical Functional Capacity Assessment form, Dr. Lisiak indicated that Plaintiff had the ability to frequently lift 10 pounds. (Tr. 177). Plaintiff is correct that Dr. Lisiak stated elsewhere in his report that "there will be no expected limitation in the claimant's ability to lift or carry weights of 10 or 25 pounds on an occasional basis." (Tr. 175). However, the court agrees with Defendant that "occasional" here refers to Dr. Lisiak's opinion regarding Plaintiff's ability to lift or carry 25 pounds. This interpretation accords with other aspects of Dr. Lisiak's report, including the aforementioned indication on the assessment form that Plaintiff could frequently lift 10 pounds, as well as Plaintiff's motor strength/muscle bulk and tone results of 5/5. (Tr. 173). Moreover, reading Dr. Lisiak's statement as indicating that Plaintiff can

9

only occasionally lift 10 pounds but that she is nevertheless able to lift 25 pounds does not make as much rational sense as interpreting the statement to say that Plaintiff can frequently lift 10 pounds but only occasionally lift 25 pounds.  The weight disparity between 10 and 25 pounds is substantial; as such, it would have been appropriate for the ALJ to conclude that these weights are unlikely to impose the same level of limitation.

Plaintiff also argues that both doctors noted limitations to include only occasional manual dexterity, and therefore, this limitation should have been included in the hypothetical.  On the contrary, Dr. Lisiak stated that "there would be no expected limitation in the claimant's ability to perform tasks of manual dexterity utilizing both hands on <u>at least</u> an occasional basis."  (Tr. 175) (emphasis supplied).  He did not limit Plaintiff's manual dexterity to occasional use.  Additionally, Dr. Lisiak elsewhere noted that "[d]uring the physical examination strength, dexterity, and finger-to-nose testing were preserved." (Tr. 175).  These findings support the ALJ's conclusion that Plaintiff's dexterity was adequate and undeserving of mention in the hypothetical.

Plaintiff also cites Dr. Zaremba's opinion that she was limited to occasional manual dexterity.  (Tr. 187).  However, the ALJ gave Dr. Zaremba's opinion "little weight."  (Tr. 14).  The court concludes that the ALJ's assignment of little weight to that opinion was appropriate, and that the ALJ's finding is supported by substantial evidence.  "[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  However, the ALJ must specify the weight given to particular medical opinions and must articulate the rationales for the weight accorded each opinion.  *See id.* at 279.  Similarly, the ALJ must articulate reasons for rejecting diagnoses based upon test results.  *See Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986).  Here, the ALJ clearly stated that she assigned little weight to Dr.

Zaremba's initial opinion based upon her conclusion that Dr. Zaremba appeared to have taken "the claimant's subjective allegations at face value and merely reiterated those allegations in his report when making his assertion regarding the claimant's ability to work." (Tr. 14). This determination by the ALJ was appropriate, as most of the limitations listed on Dr. Zaremba's report are symptoms Plaintiff complained of rather than the results of medical testing. (*See e.g.*, Tr. 185, "She feels a little more fatigued and weak;" "She states that she may have some reflux or GI distress."). Moreover, the ALJ explained that Plaintiff's own subjective complaints were not fully credible, noting that Plaintiff, despite her complaint of pain of 8 on a scale of 1 to 10, "had not been to a doctor since 2003 and was only taking over the counter medication for relief." (Tr. 15). The court finds that the ALJ has adequately explained his rationale for assigning little weight to Dr. Zaremba's opinion of Plaintiff's manual dexterity and that the ALJ's rationale is supported by substantial evidence. Hence, the ALJ's decision to pose a hypothetical to the VE that did not include a limitation of occasional manual dexterity is supported by substantial evidence.

Because the court finds that the ALJ's hypothetical was adequately phrased, it also finds that the VE's testimony that Plaintiff is qualified for various national and local "light work" jobs is supported by substantial evidence. As such, the court observes that it is unnecessary to address Plaintiff's related argument that Plaintiff is limited to sedentary work and therefore should be considered "disabled" under GRID Rule 201.09.

**B.     The ALJ Properly Applied the Eleventh Circuit's Three-part Pain Standard.**

The standard for subjective complaints of pain or other symptoms requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined

> medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit a claimant's subjective complaints. *See id.* If the ALJ discredits a claimant's subjective description of her condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Such a finding does not require the use of thaumaturgic phrases; all that is required is a clearly supported credibility determination. *See id.* However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff contends that she has met the Eleventh Circuit's three-part pain standard. She asserts that both Dr. Lisiak and Dr. Zaremba found known pain indicators, including limited range of motion, positive straight leg raise, and limping gait. Therefore, Plaintiff argues she has presented adequate evidence that she has an underlying medical condition and that this condition is of such severity that it can reasonably be expected to cause her alleged pain.

The ALJ found that "[w]hile . . . the claimant's impairments can reasonably be expected to cause some pain, the extent of the pain alleged by the claimant is not substantiated by the medical evidence." (Tr. 15). The court finds that the ALJ explicitly discredited Plaintiff's testimony and articulated sufficient reasons for doing so; as such, the ALJ's conclusion that Plaintiff did not meet the pain standard is supported by substantial evidence.

The ALJ found that Plaintiff met the first step of having an underlying medical condition. (Tr. 15). However, the ALJ then found that Plaintiff did not meet the other relevant prong that the

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. The ALJ explained that:

> [t]he claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, and the medical history.

(Tr. 17, Finding 4). The ALJ then thoroughly explained the rationale behind her conclusion. Plaintiff did not seek any medical care in 2004 or 2005, a fact which bears negatively on the credibility of her claim that she was in constant pain. Moreover, in October 2003, Plaintiff presented to Cooper Green Hospital clinic complaining of constipation, body pain, and muscle spasms. (Tr. 89). However, examination results suggested negative straight leg raising, no spine tenderness, and mild paraspinal muscle spasms. (*Id.*) In September 2003, Cooper Green Hospital admitted Plaintiff. (Tr. 81). The doctor's report from her visit states that it was unclear whether or not Plaintiff was taking medication and also notes that she had used cocaine two months earlier. (Tr. 82). Plaintiff responded well to conservative treatment for musculoskeletal pain and nausea, and her abdominal pain resolved after a bowel movement. (Tr. 83). On the day of her discharge, Plaintiff remarked that she was feeling better and wanted to go home. (*Id.*) Finally, although Plaintiff stated that she has relied on a cane due to pain in her legs, feet, and back, on examination with Dr. Lisiak, she was observed as being able to ambulate with no assistive device. (Tr. 171, 174). The court finds that these are sufficiently articulated explicit and adequate reasons for discrediting Plaintiff's allegations of disabling symptoms.

**VI.     Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Accordingly, the Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____29th____ day of August, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE